UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23471-Civ-LENARD
      (09-20046-Cr-LENARD)
MAGISTRATE JUDGE P. A. WHITE

RANDY MALDONADO,                    :

        Movant,                     :

v.                                  :          REPORT OF
                                               MAGISTRATE JUDGE
UNITED STATES OF AMERICA,           :

        Respondent.                 :
_____

## I. Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence following a guilty plea entered in Case No. 09-20046-Cr-Lenard.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion with attached exhibits (Cv-DE# 1); the government's response to an order to show cause with attached exhibits (Cv-DE# 9); the Presentence Investigation Report (PSI) and Addendum thereto; the movant's reply (Cv-DE# 11); and all pertinent portions of the underlying criminal file.

## II. Claims

Movant is raising the following grounds for relief:

1.    The government breached the terms of the written plea agreement.

2.   He received ineffective assistance of trial counsel, because his lawyer failed to object to the government's breach of the plea agreement.

3.   He received ineffective assistance of trial counsel in connection with the entry of his guilty plea and resultant career offender sentence.

4.   His plea of guilty was not knowingly and voluntarily entered.

5.   He received ineffective assistance of trial counsel in connection with the withdrawal of his guilty plea.

6.   He received ineffective assistance of trial counsel with regard to sentencing, because counsel labored under an irreconcilable conflict.

7.   He is actually innocent of the career offender enhancement, because his prior narcotics convictions did not qualify under U.S.S.G. §4B1.2(b).

### III.  Factual Background and Procedural History

### A.  Indictment, Plea Agreement and Change of Plea Proceedings

Movant was charged in a 28-count Superceding Indictment returned on June 4, 2009, with the offense of conspiring to distribute one hundred grams or more of heroin in violation of Title 21, United States Code, Section 846.[1] See Superceding Indictment at Count 6. (Cr-DE# 253). On July 10, 2009, a negotiated written plea agreement was entered into between Movant and the government in which Movant agreed to plead guilty to the one count in which he had been charged in the superseding indictment. See Plea Agreement. (Cr-DE# 282; Cv-DE# 9 at Exhibit 1). The plea agreement advised Movant he faced a minimum mandatory term of imprisonment of five years and up to a statutory maximum sentence of forty years, and that the Court could impose a sentence up to the maximum authorized by law (i.e., forty years). Id. at ¶3.

---

[1]For an extensive summary of the facts of the case, see the PSI at ¶¶7-57, 64. In brief, Movant was one of sixteen codefendants and he was a heroin distributor who purchased his supply from codefendant J. Borges. Id. He was held accountable for 420 grams of heroin plus an additional three ounces (85 grams) of heroin, which were given to his father for delivery to him, for a total of 505 grams of heroin. Id.

By executing the agreement, Movant acknowledged that the sentence would be computed based on the advisory sentencing guidelines and that the applicable guidelines would be determined by the Court relying in part on the results of a presentence investigation by the probation officer, which investigation would commence after the guilty plea has been entered. Id. at ¶2. Movant further acknowledged that while the Court was required to consider the advisory guideline range, it was not bound to impose that sentence and could depart upward or downward from the advisory sentencing guideline range. Id. Movant additionally acknowledged that the Court had the authority to impose any sentence within and up to the maximum authorized by law (i.e., 40 years) and that he could not withdraw the plea solely as a result of the sentence imposed. Id. The agreement provided that the government reserved the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as facts concerning the defendant and the defendant's background. Id. at ¶5.

The parties agreed to recommend to the Court a sentence within the advisory sentencing guideline range. Id. at ¶6. Also, by entering into the agreement, the government agreed to recommend that Movant receive an offense level reduction for acceptance of responsibility and to recommend that Movant be sentenced to the low end of the sentencing guidelines subject to any mandatory minimums. Id. at ¶7. The government and movant further agreed that they would jointly recommend to the Court that (1) the quantity of heroin involved in the offense, for purposes of U.S.S.G. §2Dl.l(a) and(c), was at least 400 grams but less than 700 grams and (2) Movant should receive neither an enhancement nor a reduction based upon his role in the offense. Id. at ¶8. In exchange for the guilty plea, the government agreed not to file an information pursuant to

3

21 U.S.C. §851(a). Id. at ¶9.

The agreement went on to provide as follows:

> The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

Id. at ¶14. The plea agreement also contained an appeal waiver whereby movant agreed that, in exchange for the government's recommendation to the Court with regard to the sentence to be imposed, he would waive his right to a direct appeal from his sentence, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure and/or a variance from the guidelines range. Id. at ¶13. The movant stated that he had discussed the appeal waiver with his attorney before entering into the plea agreement. Id. Movant further agreed, together with the government, to request that the Court enter a specific finding that the waiver of the right to appeal the sentence to be imposed in this case was knowing and voluntary. Id. Finally, the agreement provided that the written plea agreement constituted the entire agreement and understanding between the United States and movant and that there were no other agreements, promises, representations or understandings. Id. at ¶15. The plea agreement contained no mention whatever of a career offender enhancement.

4

On the same date that the plea agreement had been executed, Movant appeared for change of plea proceedings. See Transcript of Change of Plea Hearing conducted on July 10, 2009. (Cr-DE# 323; Cv-DE# 9 at Exhibit 2). At the outset of the proceeding, after Movant had been sworn, the Court read to Movant Count 6 of the Superceding Indictment, the sole count pertaining to Movant, and then asked him how he pled to the crime charged. Id. at 3-4. Movant responded, "Guilty." Id. at 3-4.  The Court then proceeded with a careful and meticulous plea colloquy pursuant to Fed.R.Crim.P. 11. The Court first obtained personal background information from Movant. Id. at 4-6. Movant informed the Court that he was twenty-three years old and had a ninth grade education. Id. at 4. The Court next asked Movant if he had read the Superceding Indictment which set forth the charge against him in the case, and he answered, "Yes, ma'am." Id. at 6. During the colloquy, Movant was fully advised that he had a right to proceed to trial before a jury and that by entering the guilty plea he was waiving all his constitution rights associated with a jury trial, such as the right to confront witnesses against him, the right to challenge the government's evidence, the right to testify in his own behalf, and the right to call witnesses in his defense. Id. at 6-7. Movant repeatedly told the Court that he understood his various constitutional rights and that he was waiving those rights. Id.

The government gave an extensive proffer of the evidence in the case that would have proved Movant's guilt beyond a reasonable doubt if the case had instead proceeded to trial. Id. at 8-10. The Court asked Movant if he understood the charge against him and if he admitted the facts as stated by the government. Id. at 10-11. Movant responded affirmatively to both questions. Id. The Court then again asked Movant how he pled to Count 6 of the Superceding Indictment and Movant answered, "Guilty, ma'am." Id. at 11. The Court also asked, "Are you pleading guilty because you are guilty?"

<u>Id</u>. Movant stated, "Yes, ma'am." <u>Id</u>.

Movant was next advised of the minimum and maximum possible penalties that could be imposed. <u>Id</u>. at 11. Specifically, he was told that the mandatory minimum penalty was five years' imprisonment and the maximum possible sentence of confinement was forty years to be followed by a mandatory term of supervised release of at least four years up to a life term of supervised release. <u>Id</u>. at 11-12. Movant indicated that he understood all possible penalties in this case if he entered a plea of guilty. <u>Id</u>. at 11-12. Regarding the sentencing guidelines, the following colloquy was conducted with Movant:

> THE COURT:        Do you understand that the provisions of the sentencing guidelines promulgated by the United States Sentencing Commission will advise the Court in this matter?
>
> THE DEFENDANT:   Yes, ma'am.
>
> THE COURT:        Have you and your attorney talked about how the sentencing guidelines might apply to your case?
>
> THE DEFENDANT:   Pretty much. Yes, ma'am.
>
> THE COURT:        Do you understand that the Court will not be able to determine the advisory guideline range for your sentence until after the advisory presentence investigation report has been completed and you and the Government have had the opportunity to challenge the reported facts and the application of the guidelines as recommended by the probation officer?
>
> THE DEFENDANT:   Yes, ma'am.
>
> THE COURT:        Do you understand that the Court will consider all of the sentencing factors provided by law, including the sentencing guidelines?
>
> THE DEFENDANT:   Yes, ma'am.
>
> THE COURT:        Do you understand that, after considering all of these factors, the Court will impose a

<pre>
                         sentence it finds appropriate, given the
                         statutory minimum and statutory maximum?

        THE DEFENDANT:   Yes, ma'am.

        THE COURT:       Do you understand that the sentence imposed
                         may be different from any estimate your
                         attorney may have given you?

        THE DEFENDANT:   Yes, ma'am.
</pre>

Id. at 13-15.

When twice asked if there had been any representations made to convince him to plead guilty other than the representations that were made to him in the written plea agreement, Movant unequivocally answered both times, "No, ma'am." Id. at 15, 26. Movant also denied that anyone had threatened or forced him to enter a guilty plea. Id. When asked if he was fully satisfied with counsel and if he had had adequate time to fully confer with counsel about the charge, the change of plea proceedings and all matters relating to the subject charge, Movant again answered in the affirmative. Id. at 15-16. The Court went on to read in its entirety the written plea agreement after which it asked Movant if he had read the agreement and if the signature on the agreement was in fact his. Id. at 16-24. Movant answered "yes," to both questions. Id. at 24. Movant also told the Court that he had fully discussed the plea agreement with counsel before signing it and that he understood all the terms of the agreement before executing the agreement. Id.

With regard to the appeal waiver provision, although Movant indicated to the Court that he was aware and understood the appeal waiver provision included in the plea agreement, he was provided with time to further privately discuss the provision with counsel. Id. at 24-25. After the off-the-record discussion, Movant told the Court that he had fully discussed the appeal waiver with counsel

and that he was entering into the waiver of his appellate rights freely and voluntarily. *Id*. at 25. Movant again assured the Court that all terms of the plea agreement entered into with the government that had just been stated in open court were in fact the terms of the agreement, as he understood them. *Id*. at 25-26. The Court went on to advise Movant that if his plea of guilty were to be accepted and the sentence imposed was more severe than expected, he would still be bound by his plea of guilty and the plea agreement and he would have no right to withdraw the guilty plea. *Id*. at 26. Movant told the Court that he understood. *Id*. Trial counsel and counsel for the government indicated to the Court that they too had executed the written plea agreement. *Id*. at 26. Trial counsel also informed the Court that he was satisfied that pleading guilty to the crime charged was in Movant's best interest, considering all circumstances in the case, and that he believed that there would be sufficient evidence upon which to convict Movant of the crime charged. *Id*. at 26-27.

Before accepting the guilty plea, the following exchange took place between the Court and Movant:

| | |
|---|---|
| THE COURT: | Mr. Maldonado, do you have any questions, sir, about the possible consequences of your plea of guilty? |
| THE DEFENDANT: | Say that again, ma'am. |
| THE COURT: | Do you have any questions about the possible consequences of your plea of guilty? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | Do you understand fully all of the possible consequences of your plea of guilty? |
| THE DEFENDANT: | Yes, ma'am. |

*Id*. at 27. The Court then expressly found that Movant had entered into a waiver of his appellate rights and such waiver had been

knowingly, freely and voluntarily made after full consultation with counsel and made without coercion or duress. Id. The Court went on to accept the change of plea, expressly finding that Movant was fully competent and capable of entering an informed plea, that Movant was aware of the nature of the charge and the consequences of the plea, and that the knowing and voluntary plea was supported by an independent basis in fact containing each of the essential elements of the offense. Id. at 27-28. The Court next advised Movant that a Presentence Investigation Report was to be prepared before sentencing to assist the Court in sentencing, that he would be asked to provide information to the Probation Officer, that he and counsel would be given a copy of the report to read, and that he would be entitled to file any appropriate objections to the report before the sentence proceeding. Id. at 28. He was also told that he would be given an opportunity to address the Court with respect to the sentence to be imposed. Id. Finally, before concluding the proceeding, the Court asked if there were any other issues or matters that needed to be addressed at that time. Id. at 29. Both counsel answered in the negative and Movant remained silent. Id.

B. Presentence Investigation Report and Sentence Proceedings

The PSI extensively detailed the pertinent facts of the case and Movant's role in the offense conduct. See Presentence Investigation Report at ¶¶7-74. The probation officer determined that Movant was responsible for 505 grams of heroin and therefore, pursuant to U.S.S.G. §2D1.1(a)(3), the base offense level was 28. Id. at ¶78. Since there were no added adjustments, the adjusted base offense level was 28. Id. at ¶¶79-83. The probation officer determined that the movant was a career offender, because he was at least 18 years of age at the time of the instant offense, the instant offense was a felony controlled substance offense, and the movant had at least two prior felony convictions of a controlled

substance offense. Id. at ¶84. The PSI indicated that Movant had been convicted on August 8, 2006, in Broward County Circuit Court Case No. 04-019477 with the offense of delivery of cocaine, and on June 9, 2006, in Broward County Circuit Court Case No 06-6491 of the offense of possession with intent to sell, manufacture, or deliver cocaine. Id. at ¶¶84, 93, 95. Since the statutory maximum penalty for the instant offense was 40 years, the offense level was adjusted to 34 pursuant to U.S.S.G. §4B1.1(b)(B). Id. at ¶84. Movant was afforded a three-level reduction pursuant to U.S.S.G. §3E1.1(a) and (b) for his acceptance of responsibility and assistance in the investigation of the case, thereby, decreasing his base offense level by three levels, giving him a total offense level of 31. Id. at ¶¶85-87.

Movant had a subtotal of six criminal history points but, since he committed the instant offense less than two years from his release from custody, an additional two points were added pursuant to U.S.S.G. §4A1.1(e). Id. at ¶102. He, therefore, had a total of eight criminal history points which would have resulted in a criminal history category of IV, but due to his career offender status, he had a criminal history category of VI. Id. at ¶102-103. Based on a total offense level of 31 and a criminal history category of VI, the resulting guideline range was 188 to 235 months in prison. Id. at ¶163. The total statutory minimum term of imprisonment was five years and the maximum was forty years. Id. at ¶162. A term of supervised release of at least four years was required by the applicable statute and sentencing guidelines provision. Id. at ¶¶164, 165.

Neither the government nor the Movant filed any objections whatever to the PSI. See Addendum to the Presentence Report. See also Transcript of Sentencing Hearing conducted on October 26, 2009, at 2. (Cr-DE# 395; Cv-DE# 9 at Exhibit 4). Movant did submit

to the Court on September 17, 2009, a pro se document entitled, "Ineffective Council [sic]," with attached letter, essentially alleging that before entry of the guilty plea, he had been advised by trial counsel that he did not qualify for enhanced sentencing as a career criminal and would receive a sentence of imprisonment between five and seven years. (Cr-DE# 326; Cv-DE# 1 at Appendix A; Cv-DE# 9 at Exhibit 5). He stated that he had learned from reviewing the PSI that he was to receive an enhanced sentence as a career criminal, contrary to what he had been advised by trial counsel. Id.

At the outset of the sentence proceeding, the issue raised in Movant's pro se letter to the Court was addressed with trial counsel stating as follows:

> Your Honor, the first thing I would like to bring up is the fact that when we had discussions, [Assistant United States Attorney Edenfield] and myself, prior to Mr. Maldonado entering his plea, I didn't have access to his prior criminal history. I believe Mr. [Edenfield] did. He did not believe that Mr. Maldonado qualified as a career criminal, nor did I. I discussed this with Mr. Maldonado before he came before Your Honor and pled guilty.
>
> As a result of his PSI, it came back and showed that, in fact, he had -- or does qualify as a career criminal. The alternative given to me was, by Mr. [Edenfield], was if he wants to withdraw his plea, I will allow him to withdraw his plea. Mr. Maldonado did not wish to do that. But what -- he wrote some notes for me which he wanted me to address the Court and I'll be more than happy on his behalf.
>
> The guidelines for what he would have qualified for would have been a Level 28 with a three-level acceptance responsibility reduction, which would have been a Level 25, Category IV, and that would have come out to 84 to 105 months.
>
> Your Honor, as you have seen, obviously, with all the other co-defendants and so forth in the case, and one of the lead defendants in the case received 120 months, I believe. The -- I think the discrepancy between what Mr. Maldonado should receive, that is between 84 and 105 months, and the career criminal, which is 188 months, makes a tremendous increase in the amount of time Mr. Maldonado's looking at as a result of this offense and this indictment. And I believe that Your

Honor has the power to take this discrepancy of sentence and
his part in the crime, being a low-level drug dealer, without
having to give him the 180 day to 200 and some four months, I
believe the top end of that is – ... 235, I'm sorry. And as
Your Honor knows, you've had pleas from some of the other
defendants in the case.

I also believe he wanted me to point out that the present
offense is more than two years from the last offense and,
therefore, he should not receive a two point increase for that
particular fact. So I know Mr. Maldonado wants to address the
Court, Your Honor. And  I would just say that it's based on
myself and [AUSA Edenfield]'s miscalculation as to what his
status would be after the plea. I think that it -- an
appropriate sentence would be in the 84 to 105-month range,
including whatever supervised release.

Id. at 4-5. Argument next followed regarding the additional points
pursuant to U.S.S.G. §4A1.1(e), which issue the Court resolved in
favor of the government. Id. at 6-7.

Movant then personally addressed the Court, stating as
follows:

I want to apologize to my mother who is suffering more than me
for this situation. And I just want to let her know I need her
to be strong for me. And, Your Honor, I want to apologize to
everybody for the mistake I committed. I'm 23 years old. I
have a lot to learn in life and plenty of mistakes for me to
learn from.

Your Honor, when my lawyer said I was going to catch five to
seven years, I've been experiencing life from eight – like,
eight to ten years now, so seven years would be a life
sentence to me, you know. And not only do I get the news that
I made career offender at the last minute and he gives me 188
months, you know, if you give me 10, 15 years, by the time I
get out, I would be 40 years old. What have I accomplished by
then, other than being a Hispanic male and a statistic of
being in prison.

And I want to apologize to everybody and I actually ask you to
give me a fair chance so I can get back to my family and my
kids and be a father figure for my kids.

And that's it, Your Honor.

Id. at 7-8.

The government recommended a sentence at the bottom of the sentencing guidelines of 188 months. Id. at 8. Trial counsel responded that a sentence of 84 to 105 months would be the appropriate sentence in this case, the guidelines sentencing range if Movant had not qualified as a career offender. Id. at 9. Before imposing sentence, the Court extensively reviewed the lengthy criminal history of Movant who was only twenty-three years of age at the time of sentencing and whose history included several serious offenses. Id. at 11-13. After having listened to the Movant and argument from counsel, and after considering the statutory factors set out in 18 U.S.C. §3553, the Court sentenced Movant to a term of imprisonment of 150 months followed by a five-year term of supervised release. Id. at 9-15. See also Cr-DE# 381. The Court explained why it was rejecting trial counsel's recommended sentence of 84 to 105 months, stating in pertinent part:

> When considering all of these matters, as well as the need to avoid unwarranted sentencing disparities, I find that a sentence of 150 months is the appropriate sentence. It takes into account the defendant's substantial criminal history and his involvement in drug trafficking; it provides just punishment and adequate deterrence. *It also takes into account his young age and the fact that without the career offender status, his guidelines, with a Criminal History Category of IV, would have been 84 to 105 months. I don't find that he's entitled to be sentenced in that advisory guideline range because I find it necessary to take into account not only does he have a Criminal History Category of IV, but this Criminal History Category IV involves three offenses, three prior offenses that involve him in the possession, sale, and delivery of cocaine, crack, and/or heroin.*

(emphasis supplied). Id. at 13.

## C. Direct Appeal and §2255 Motion

Movant timely filed a pro se notice of appeal after which trial counsel Keefe was permitted to withdraw from the case and Movant was appointed Assistant Federal Public Defender Ana Mara Jhones to represent him on appeal. (Cr-DE# 402, 433, 446). The

government filed a motion to dismiss the appeal pursuant to the appeal waiver or, in the alternative, to dismiss the appeal on the merits as frivolous. See United States v. Maldonado, No. 09-15745-FF (11th Cir. June 17, 2010). See also Cr-DE# 618. By order entered on June 17, 2010, the Eleventh Circuit Court of Appeals granted the government's motion to the extent it dismissed the direct appeal based upon the appeal waiver, stating as follows:

> "A plea agreement is, in essence, a contract between the Government and a criminal defendant. Among the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily." U.S. v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999)(citation omitted); see also U.S. v. Bascomb, 451 F.3d 1292, 1296 (11th Cir. 2006)(explaining that "appeal waivers are like contracts in which the government and the defendant have bargained for a deal"). This Court will enforce an appeal waiver according to its terms where the record shows the waiver to have been knowing and voluntary. See, e.g., Bascomb, 451 F.3d at 1294-1296 (collecting cases).

> Under general contract principles, a party's power to avoid a contract for mistake is lost if, after learning of the mistake, he manifests to the other party his intention to affirm the contract or otherwise acts in a manner inconsistent with disaffirmance of the contract. See Restatement (Second) of Contracts § 380 (1981). Persuasive authority holds this rule applicable to a defendant in circumstances analogous to those at bar. See U.S. v. Segura, 139 Fed.Appx. 79, 83, 2005 WL 1566748,3 (10th Cir. 2005)(unpubl.)[footnote omitted].

> The record demonstrates that Appellant knew he was surrendering his appellate rights in his plea agreement and that he was doing so voluntarily. We express no opinion on whether the mutual mistake on the career offender issue, standing alone, would place the enforceability of the otherwise valid appeal waiver into question, as the Government's offer to allow Appellant to withdraw his guilty plea gave Appellant the opportunity to avoid the waiver's effect. Appellant ratified and affirmed the terms of his plea agreement by persisting in his guilty plea rather than withdrawing the plea and proceeding to trial, with full knowledge that he was about to be sentenced as a career offender.

United States v. Maldonado, No. 09-15745-FF (11th Cir. June 17, 2010).

Movant did not file a petition for writ of certiorari before the United States Supreme Court. On September 12, 2011,[2] Movant filed the instant *pro* *se* motion to vacate pursuant to 28 U.S.C. §2255.[3]

## IV. Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. In determining whether to vacate a movant's sentence, a district court must first determine whether a movant's claim is cognizable under Section 2255. See Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004)(stating that a determination of whether a claimed error is cognizable in a Section 2255 proceeding is a "threshold inquiry"), *cert. denied*, 543 U.S. 891, 125 S. Ct. 167, 160 L. Ed. 2d 154 (2004). It is well-established that a Section 2255 motion may not be a substitute for a direct appeal. Id. at 1232 (*citing* United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)).

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." Id.

---

[2]This Court applies the "mailbox rule" and deems the motion to vacate filed on the date it was delivered to prison authorities for mailing. See Adams v. United States, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). See also Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[3]The Eleventh Circuit dismissed Movant's direct appeal on June 17, 2010. Since Movant did not seek certiorari review of that dismissal, his judgment became final on September 15, 2010. He had one year from that date to seek habeas relief. See 28 U.S.C. §2255(f)(1); see also Stewart v. United States, 646 F.3d 856, 857 (11th Cir. 2011). The government appropriately does not challenge the timeliness of the instant motion to vacate.

(*citing* <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Id</u>. at 1232-33 (*quoting* <u>Richards v. United States</u>, 83 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>Frady</u>, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). <u>See also</u> <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

V. <u>General Legal Principles</u>

A. <u>Guilty Plea</u>

It is well settled that before a trial judge can accept a

guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). See also United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. denied, 540 U.S. 1149, 124 S.Ct. 1146, 157 L.Ed.2d 1042 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986). In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked.

Mabry v. Johnson, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. Mabry, 467 U.S. at 509, quoting, Brady v. United States, 397 U.S. at 748. If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. Mabry, 467 U.S. at 509. See also Santobello v. New York, 404 U.S. 257 (1971).

## B. Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. at 689. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). If the movant cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs).

This two-part standard is also applicable to ineffective-assistance-of-counsel claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 57-59, 106 S.Ct. 366, 88

L.Ed.2d 203 (1985). Generally, as indicated, a court first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Padilla, 130 S.Ct. at 1482. In the context of a guilty plea, the first prong of *Strickland* requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have gone to trial. Hill, 474 U.S. at 56-59. See also Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, ____ L.Ed.2d ____, 2012 WL 932019 (March 21, 2012); Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, ___ L.Ed.2d ___, 2012 WL 932020 (March 21, 2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S.Ct. at 1485 (*citing* Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007), *cert. denied*, 554 U.S. 925, 128 S.Ct. 2975, 171 L.Ed.2d 899 (2008)(*quoting* Hill, 474 U.S. at 59-60). In conducting this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136(1977).

Since the sentence ultimately imposed upon the defendant is a "result of the proceeding," in order for a petitioner to satisfy the prejudice-prong of *Strickland*, he must demonstrate that there is a reasonable probability that the conditions of his guilty plea or his sentence would have been different but for his trial counsel's errors. See *United States v. Boone*, 62 F.3d 323, 327 (10th Cir.)(rejecting the defendant's claim that counsel was ineffective in part because the defendant failed to show "that the resulting sentence would have been different than that imposed under the Sentencing Guidelines"), *cert*. *denied*, 516 U.S. 1014 (1995). Thus, the *Strickland* test applies to claims involving ineffective assistance of counsel during the punishment phase of a non-capital case. See *Glover v. United States*, 531 U.S. 198 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"); *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). If the petitioner cannot meet one of *Strickland*'s prongs, the court does not need to address the other prong. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. *See also* *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004).

## VI. Discussion

### A. Breach of Plea Agreement

Movant alleges in **ground one** that the government breached the terms of the written plea agreement by allowing him to be sentenced as a career offender. It is beyond dispute that a plea agreement is a contract that must be honored by the government. See *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). The Supreme Court stated in *Santobello*, that "when a plea rests in any significant degree on a promise or agreement of a prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. "When a prosecutor breaks the bargain, he undercuts the basis for the

waiver of constitutional rights implicit in the plea." <u>Id.</u> at 268 (Marshall, J. concurring in part and dissenting in part). Accordingly, "the government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." <u>United States v. Taylor</u>, 77 F.3d 368, 370 (11th Cir. 1996); <u>United States v. Peglera</u>, 33 F.3d 412, 413 (4th Cir. 1994).

        In determining whether the terms of a plea agreement have been violated, the Court must determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement at the time that the defendant entered his plea. <u>United States v. Boatner</u>, 966 F.2d 1575, 1578 (11th Cir. 1992); <u>United States v. Valencia</u>, 985 F.2d 758, 760-61 (5th Cir. 1993). The government's argument at sentencing may breach the promises contained in a plea agreement when the government's statements regarding the PSI are inconsistent with the plea agreement or when the government advocates a sentence greater than indicated in the plea agreement. <u>See</u> <u>Taylor</u>, 77 F.3d at 370 ("Advocacy of a position requiring a greater sentence is flatly inconsistent with recommendation of a lesser sentence."); <u>Boatner</u>, 966 F.2d at 1578-79. <u>See also</u> <u>United States v. Rewis</u>, 969 F.2d 985, 987-88 (11th Cir. 1992)(holding that the prosecutor's arguments suggesting a harsh sentence breached the government's promise in the plea agreement "not to recommend what sentence should be imposed"). The defendant has the burden of proving facts showing a breach of a plea agreement, and he must make that showing by a preponderance of the evidence. <u>See</u> <u>United States v. Garcia-Bonilla</u>, 11 F.3d 45, 46 (5th Cir. 1993). If, after construing the agreement, the court finds that the movant has satisfied his burden of showing a breach, it may then fashion a remedy, including specific performance of the agreement or withdrawal of the plea. <u>See</u> <u>Santobello</u>, 404 U.S. at 263 (relief may include specific performance or withdrawal of

plea); United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir.
1988)(same).

   The record in this case clearly belies Movant's claim that the
government breached the terms of the plea agreement. As indicated
above, the written plea agreement required the government to  (1)
recommend to the Court during sentencing that it impose a sentence
at the low end of the advisory sentencing guidelines range and not
depart from the guidelines range; (2) recommend to the Court during
sentencing that Movant be awarded a reduction in the sentencing
guidelines level for his timely acceptance of responsibility; (3)
recommend to the Court that the quantity of heroin involved in the
offense, for purposes of U.S.S.G. §2D1.1(a) and(c) was at least 400
grams but less than 700 grams; (4) recommend to the Court that
Movant receive neither an enhancement nor a reduction based upon
his role in the offense; and (5) not file an information pursuant
to 21 U.S.C. §851(a). See Plea Agreement at ¶¶6, 7, 8 and 9. During
the sentence proceeding, the government recommended a sentence at
the low-end of the sentencing guidelines and did all that it had
promised to do under the agreement. See Transcript of Sentencing
Hearing conducted on October 26, 2009, at 3, 8.

   Movant maintains, however, that the government had also
promised him a non-career offender sentence. He relies upon
conversations between trial counsel and the government before the
plea agreement had been entered, which conversation had been
conveyed to him, indicating that both defense counsel and the
government believed that Movant did not qualify as a career
offender. Id. at 4. The subsequent investigation conducted by the
probation officer indicated otherwise, as stated in the PSI. Id.
When discussions were had about Movant's criminal history a
Presentence Investigation Report had not yet been prepared and

22

Movant's full criminal history had not yet been obtained.[4] The discussion between counsel, therefore, cannot be deemed promises or assurances made to Movant as to the sentence he would receive as a result of his guilty plea and were merely made as part of the plea discussions with defense counsel regarding plea negotiations and possible scenarios as to sentence.

Once Movant indicated that he wanted to dispose of the case by way of a guilty plea, a formal and binding written plea agreement was drafted which included all the terms and provisions set forth above. In particular, by executing the plea agreement, Movant expressly acknowledged:

> The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety....

(Plea Agreement at ¶14). The plea agreement also explicitly provided that the government may inform the Court of facts relevant to sentencing, including information on Movant's background. Id. at ¶5. Movant indicated to the Court during the change of plea proceeding that he executed the written plea agreement and he understood all terms of the agreement, which included the provision that the written agreement was the entire agreement and understanding between him and the government and that there were no other agreements, promises, representations or understandings. See Transcript of Change of Plea Hearing conducted on July 10, 2009, at

---

[4]Movant now claims in this postconviction proceeding that he had apprised trial counsel before entry of the plea agreement that he had prior drug convictions in the State of Florida. See Reply at 7. (Cv-DE# 11).

24. As stated above, the plea agreement contained no mention whatever of the career offender enhancement.[5] Movant's representations during the plea proceedings, as well as those of counsel, constitute a formidable barrier in any subsequent collateral proceedings. Blackledge v. Allison, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."). See also United States v. Anderson, 384 Fed.Appx. 863, 865 (11th Cir. 2010)("There is a strong presumption that statements made during a plea colloquy are true.")(unpublished); United States v. Munguia-Ramirez, 267 Fed.Appx. 894, 897 (11th Cir. 2008)(stating that when a movant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true")(citations omitted)(unpublished).

Even if non-career offender sentencing could in any way be considered a term of the executed plea agreement, any such term was later waived by Movant. After the change of plea proceeding had been conducted, but before sentencing, trial counsel and counsel for the government learned that Movant did in fact qualify as a career criminal. See Transcript of Sentencing Hearing conducted on October 26, 2009, at 4. Based upon Movant's criminal history and career criminal status, the government agreed to permit Movant to withdraw his guilty plea based upon the mistake with regard to the career offender issue and its impact upon the sentence to be imposed. Id. Movant, however, chose not to do so and elected to proceed to sentencing with the already entered guilty plea. Id. At the start of the sentence hearing, trial counsel apprised this Court of such facts and that Movant persisted in his desire to

---

[5]As pointed out by the government, the Eleventh Circuit has held that "the Government does not have to follow the notice requirements of section 851 in order to use a defendant's prior convictions to enhance his sentence under the Guidelines as a career offender." Young v. United States, 936 F.2d 533, 535-36 (11th Cir. 1991).

proceed to sentencing upon his already entered plea of guilty with the knowledge of his career offender status. Id. When counsel made the announcement, Movant remained silent. Id. Further, Movant personally addressed the Court, acknowledging his career offender status and indicating that he understood that the sentence imposed could be more severe than expected. Id. at 7-8. He merely requested the lowest possible sentence. Id.

While the ultimate sentence imposed pursuant to Movant's guilty plea had not been contemplated in the pre-plea discussions and possibly after the change of plea proceeding, the government's conduct was consistent with the parties' reasonable understanding of the written plea agreement, which Movant had read, understood and executed and which he agreed to be bound before and after learning of his career offender status. The government agreed to recommend a sentence within the "advisory sentencing guideline range," which it did when it recommended the Court sentence Movant to the low-end of the guidelines range. Thus, Movant's claim that the government breached the terms of the plea agreement is meritless and he is entitled to no relief on the claim. See Santobello, 404 U.S. 257.

### B. Effectiveness of Counsel Regarding Guilty Plea and Lawfulness of Guilty Plea

Although raised as three separate grounds for relief, Movant is essentially alleging in **grounds two**, **three and four** that his plea of guilty was unlawful on the basis of ineffective assistance of trial counsel. Specifically, Movant alleges that counsel erroneously advised him that if he accepted the government's plea offer, he would not be subjected to a career offender sentence. He maintains that the government breached the plea agreement when he received a career offender sentence and trial counsel rendered ineffective assistance when counsel failed to object to the breach

of the plea knowing that he was unwilling to enter into any plea agreement where he could receive an enhanced sentence as a career offender.[6] He further contends that when counsel's erroneous advice regarding career offender sentencing is coupled with the unlawful career offender sentence, his plea of guilty was not knowingly and voluntarily entered.

For the reasons stated above in connection with ground one, there was no breach of the plea agreement. The negotiated plea agreement did not include any terms whatever regarding career offender status. Consequently, trial counsel's performance cannot be deemed ineffective for failing to object to a breach of the plea agreement by the government. See generally, Strickland, supra.

Moreover, it cannot be said that defense counsel had promised or guaranteed such a non-career offender sentence, although he had erroneously indicated a lesser sentence as a non-career offender would be possible. An erroneous estimation of the guidelines does not entitle Movant to relief in that "[a]n erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir. 1981).[7] At the time that Movant executed the plea agreement and again during the colloquy with the Court, he was aware of the possible penalties in this case, which clearly exceeded the sentence imposed. Movant, therefore, has failed to demonstrate that counsel was ineffective for any incorrect

_____

[6]As noted, Movant asserts in his reply that before entering into the plea agreement, he had told counsel of his prior narcotics convictions entered in the State of Florida and his unwillingness to enter into any plea agreement with the government if he were not assured that he would not be sentenced as a career offender. See Reply at 7, 9. (Cv-DE# 11).

[7]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit B decisions rendered after October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

estimation of the sentence or that his guilty plea had been unknowing or involuntarily entered. See United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence). See also Cruz v. United States, 188 Fed.Appx. 908, 914 (11th Cir. 2006)(finding no ineffective assistance where movant claimed that counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing because, inter alia, "[t]he court ... explained to her the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else.")(unpublished); United States v. Miley, 119 Fed.Appx. 330, 332 (2d Cir. 2005)(holding that any prejudice from defense counsel's alleged misrepresentations as to what movant's sentence would be was dispelled by the time movant pleaded guilty and acknowledged that no promises had, in fact, been made to him outside of the plea agreement)(unpublished); United States v. Macon, 91 Fed.Appx. 239, 243 (3d Cir. 2004)("[W]e have long held that an erroneous sentencing prediction by counsel does not constitute ineffective assistance of counsel where an adequate plea hearing was conducted.")(unpublished); United States v. Smith, 371 Fed.Appx. 901, 905 (10th Cir. 2010)("miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel")(citations omitted)(unpublished).

Further, a defendant's reliance on his attorney's erroneous prediction of a more lenient sentence is not sufficient to render a guilty plea involuntary. See United States v. Pease, 240 F.3d 938, 940-41 (11th Cir. 2001)(rejecting argument by defendant who received an enhanced sentence as a career offender that his plea was not knowing and voluntary because court advised him that he faced a statutory maximum of life and despite counsel's prediction

that his potential sentence under the plea agreement would be anywhere from five to ten years); United States v. Harmon, 139 F.3d 899 (5th Cir. 1998)(finding that the defendant could not "claim that his guilty plea was involuntary based upon his attorney's erroneous prediction about the length of the sentence"); United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987). As the Fifth Circuit explained in Daniel v. Cockrell, 283 F.3d 697 (5th Cir. 2002):

> A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

Daniel, 283 F.3d at 703.

It is also noted that Movant cannot satisfy the prejudice prong of Strickland. Despite his protestations to the contrary in this collateral proceeding, Movant cannot show that but for the alleged error his attorney made, he would have pled not guilty. See Hill, 474 U.S. at 52. As indicated, before sentencing, Movant had the opportunity to withdraw his plea when he learned that he would be sentenced as a career offender. He, however, elected to proceed to sentencing with full knowledge of the career offender sentencing provisions. He, therefore, did not receive constitutionally ineffective assistance of counsel. See, e.g., United States v. Bonds, 295 Fed.Appx. 604, 606 (4th Cir. 2008)(holding that trial counsel's lack of knowledge of Movant's potential armed career criminal status does not constitute ineffective assistance because, even if counsel's performance were deemed deficient, Movant was not prejudiced in that he was given opportunity to withdraw plea at start of sentencing hearing when district court acknowledged error

regarding Movant's status and Movant elected to proceed with sentencing with full knowledge of the armed career criminal sentencing provisions, *citing*, <u>Hill</u>, <u>supra</u>)(unpublished). <u>See also United States v. Perez</u>, 129 F.3d 255, 261 (2d Cir. 1997)(holding that Movant cannot show prejudice (i.e., but for the alleged errors his attorney made, he would have pled not guilty) in that at sentencing, Movant was given opportunity to withdraw plea and he chose not to do so,  although he was fully informed and aware of his likely sentence).

Movant suffered no prejudiced for an alternate reason. During sentencing, trial counsel forcefully argued that under all circumstances of this case, the Court should depart from the advisory guidelines range and sentence Movant within the range as a non-career offender. <u>See</u> Transcript of Sentencing Hearing conducted on October 26, 2009, at 4-5. This Court, however declined to do so, believing that such a sentence did not appropriately take into consideration Movant's long and serious criminal history. <u>Id</u>. at 9-13. It is apparent from the Court's remarks that the Court would have departed upward from the 84 to 105 months' imprisonment, if the career offender designation had not applied. <u>Id</u>. In addition, trial counsel successfully convinced the Court to depart downward from the applicable sentencing guidelines range (i.e., a sentence of 150 months where the advisory sentencing guidelines range was  188 to 235 months). Thus, any deficient performance on the part of counsel did not affect the outcome of Movant's sentence, resulting in constitutionally effective assistance. <u>See</u> <u>Boone</u>, 62 F.3d at 327; <u>Spriggs v. Collins</u>, 993 F.2d at 88. <u>See also</u> <u>Glover</u>, 531 U.S. 198.

C. <u>Effectiveness of Counsel Regarding Withdrawal of Guilty Plea</u>

Movant claims in **ground five** that he received ineffective assistance of trial counsel in connection with the withdrawal of

his guilty plea. Specifically, Movant alleges that he decided not to withdraw his plea because counsel informed him that if he withdrew his plea, he would be subject to a mandatory life sentence if the government filed a notice of enhancement under 21 U.S.C. §851. Movant maintains that counsel's advice was erroneous, because he would not have qualified for such an enhanced sentence in that the convictions underlying the enhancement had been imposed less than five years before the instant offense, giving him the right to challenge the lawfulness of his prior convictions which he would have done.

Counsel's performance was not deficient with respect to discussions about withdrawing the guilty plea. Because Movant had two or more qualifying prior felony drug convictions, if the government had filed notice under 21 U.S.C. §851, he was subject to a term of life imprisonment, as required by 21 U.S.C. §841(b)(1)(A). It is true that if the government had filed the §851 notice, Movant would have had the right to raise a constitutional challenge, such as ineffective assistance of counsel in connection with the State of Florida convictions, to either or both prior convictions. 21 U.S.C. §841(c). However, any such challenge would have had to comply with section 851(c)(2)'s requirement to set forth "with particularity" any constitutional challenge to a prior conviction and "the factual basis therefor." United States v. Gaviria, 116 F.3d 1498, 1525 (D.C.Cir. 1997)(*citing* 28 U.S.C. §851(c)(2)). Movant's purported factual basis falls short of this requirement. See Reply at 13. (Cv-DE# 11). Accordingly, Movant could not then and still cannot satisfy the requirements of §851(c)(2). Again, Movant chose to persist with the guilty plea and never elected to proceed to trial where he could have earlier challenged the lawfulness of his state court conviction if the government had filed the §851 notice. See United States v. Thomas, 348 F.3d 78, 88 (5th Cir. 2003), *citing*, United States v. Garcia,

954 F.2d 273, 277 (5th Cir. 1992)("A defendant who wishes to challenge prior convictions being used for enhancement purposes has available to him the comprehensive procedures of §851(c), but he must give advance notice to the court and the government of the basis for his challenge.").

Also, as aptly asserted by the government, Movant received a significant benefit by pleading guilty. By persisting with his guilty plea, the government agreed not to file a §851 enhancement and counsel was able to obtain for Movant a downward departure sentence of 150 months from the advisory guideline range of 188 to 235 months. Given the significant benefit obtained by the plea (i.e., a sentence of 150 months rather than life imprisonment), Movant's assertions in this §2255 that he would have proceeded to trial, where the evidence was overwhelming against him and risked life imprisonment if found guilty, is incredible. Accordingly, Movant's conclusory, after-the-fact statement that he would have withdrawn his plea had he known he could possibly challenge his underlying convictions is insufficient to establish prejudice.[8] Movant is, therefore, not entitled to relief on ground five.

D. Effectiveness of Counsel Regarding Sentencing

Movant claims in **ground six** that he received ineffective assistance of trial counsel with regard to sentencing, because his lawyer labored under an irreconcilable conflict. Specifically,

---

[8]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir.1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)); Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983). Accordingly, a habeas petitioner's self-serving testimony after the fact that he would have gone to trial if he had known one or another fact is in and of itself insufficient. Siao-Pao v. Keane, 878 F.Supp. 468, 472 (S.D.N.Y. 1995); see also, e.g., Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991)(a defendant's testimony after the fact suffers from obvious credibility problems).

Movant alleges that his lawyer should have moved to withdraw from representing him after he filed his pro se letter with the Court expressing concerns with counsel's effectiveness. This claim is meritless, as belied by the record.

As indicated above in the procedural history section of this Report, Movant submitted to this Court on September 17, 2009, a pro se document entitled, "Ineffective Council [sic]," with attached letter, essentially alleging that he had been advised by trial counsel that he did not qualify for enhanced sentencing as a career criminal and would receive a sentence of imprisonment between five and seven years, but had learned from reviewing the PSI that he was to receive an enhanced sentence as a career criminal. (Cr-DE# 326; Cv-DE# 1 at Appendix A; Cv-DE# 9 at Exhibit 5). He asked the Court not to sentence him as a career offender. Id. Although Movant did complain to the Court about counsel's erroneous prediction of sentence, Movant in no way sought the dismissal of appointed trial counsel/or the appointment of new counsel. Id. Nor did he express such a desire to the Court soon thereafter when he appeared before the Court for sentencing. While Movant was unhappy with the determinations of the probation officer with regard to his career offender status, such determination did not call for the withdrawal of trial counsel on the basis of a conflict of interest or otherwise.[9] And, as stated above, while trial counsel could not

_____

[9]The right to effective assistance includes the right to representation free from conflicts of interest. Cuyler v.Sullivan, 446 U.S. 335, 348-50, 100 S.Ct. 1708 (1980). In order to establish ineffective assistance of counsel in a conflict of interest situation, a defendant who did not raise an objection at trial "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348. See also United States v. Novaton, 271 F.3d 968 (11th Cir. 2001); Freund v. Butterworth, 165 F.3d 839, 859-60 (11th Cir. 1999)(holding that to prove that an "actual conflict" hindered lawyer's performance, defendant must make factual showing of inconsistent interests or point to specific instances in record to suggest an actual impairment of his interests). If a defendant proceeds under Cuyler by demonstrating an actual conflict of interest, prejudice is presumed. Strickland, 466 U.S. at 692, 104 S.Ct. at 2067. A conflict of interest arises "when the defense attorney ... [is] required to make a choice advancing his own interests to the detriment of his client's interests." United States v. Horton, 845 F.2d

convince the Court to impose a sentence within the non-career offender advisory guidelines range, he was able to effectively argue that a downward departure sentence was appropriate in this case. Review of the record in its entirety does not demonstrate that an actual conflict of interest existed which adversely affected the adequacy of trial counsel's representation, resulting in a Sixth Amendment violation. <u>Strickland v. Washington</u>, 466 U.S. at 692.  Movant received vigorous and able representation more than adequate under the Sixth Amendment standard.

### E.  <u>Lawfulness of Career Offender Sentence</u>

Movant claims in **ground seven** that this Court erred in applying the career offender enhancement because he is "actually innocent" of the enhancement in that his prior narcotics convictions entered in the State of Florida pursuant to <u>Fla.Stat</u>. §893.13 no longer qualify under U.S.S.G. §4B1.2(b). Movant is not entitled to relief on this ground, because the challenge to the sentence imposed is procedurally barred from postconviction review on the merits by the sentence appeal waiver contained in Movant's plea agreement.

As stated, a motion to vacate under section 2255 is not meant to replace a direct appeal. Issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. <u>Massaro v. United States</u>, 538 U.S. 500 (2003). <u>See also</u> <u>United States v. Frady</u>, 456 U.S. 152 (1982); <u>Lynn v. United States</u>, 365 F.3d 1225, 1234-35 (11th Cir. 2004). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal and actual prejudice

---

1414, 1419 (7th Cir.1988). Such was not the situation here.

resulting from the alleged error or (2) actual innocence. Lynn, 365 F.3d at 1234; Bousley v. United States, 523 U.S. 614, 623 (1998). See also Bousley, 523 U.S. at 622; Jones v. United States, 153 F.3d 1305 (11th Cir. 1998)(finding that cause and prejudice was not available to movant as a means of avoiding procedural default, but recognizing that actual innocence might still be a viable option); Campino v. United States, 968 F.2d 187, 189-90 (2d Cir. 1992)("[A] procedural default of even a constitutional issue will bar review under Section 2255, unless the petitioner can meet the 'cause and prejudice' test").

The claim now raised by the movant with regard to the lawfulness of his sentence was not raised on direct appeal. Throughout the instant motion, Movant argues that counsel rendered ineffective assistance for failing to pursue the particular sentence challenge before or at sentencing. Generally, the claim of ineffective assistance of counsel may constitute cause for a procedural default. See generally Murray v. Carrier, 477 U.S. 478 (1986). "[An] ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). See also United States v. Breckenridge, 93 F.3d 132, 134 n.1 (4th Cir. 1996).

However, the Eleventh Circuit has held that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005); see also, Leach v. United States, 171 Fed.Appx. 765 (11th Cir.

34

2006)(unpublished); <u>Johnson v. United States</u>, 2007 WL 4615236 *5-6
(S.D.Fla. 2007). As concluded correctly by the <i>Williams</i> court, to
hold otherwise would permit the movant "to circumvent the terms of
the sentence-appeal waiver simply by recasting a challenge to his
sentence as a claim of ineffective assistance, thus rendering the
waiver meaningless." <u>Williams v. United States</u>, <u>supra</u>. A waiver is
knowing and voluntary if 1) the district court specifically
questioned the defendant about the waiver during the plea colloquy,
or 2) the record demonstrates that the defendant understood the
full significance of the waiver. <u>Id</u>. See also <u>United States v.
Banks</u>, 350 Fed.Appx. 419, 420 (11th Cir. 2009)(enforcing a sentence
appeal waiver to bar the defendant's challenges to the court's
sentencing guideline calculations)(unpublished); <u>United States v.
Ray</u>, 346 Fed.Appx. 507, 511 (11th Cir. 2009)(same)(unpublished).

Here, review of the transcript of the change of plea
proceeding reveals that Movant acknowledged while under oath that
he had read and discussed with counsel the terms and conditions of
the written plea agreement before he executed the agreement and
that he had understood all terms and conditions.[10] <u>See</u> Transcript
of Change of Plea Hearing conducted on July 10, 2009, at 24-25. The
Court thoroughly and fully questioned Movant about the appeal
waiver during which Movant advised the Court that he understood the
waiver. <u>Id</u>. When Movant indicated, however, that he had not fully
discussed the waiver with counsel, the Court provided Movant with

---

[10]As noted herein, Movant's representations during the plea proceeding, as
well as those of his lawyer and the findings by this Court when accepting the
plea, "constitute a formidable barrier in any subsequent collateral proceedings."
<u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).
Solemn declarations in open court carry a strong presumption of truthfulness, and
a defendant bears a heavy burden to show that the plea was involuntary after
testifying to its voluntariness in open court. <u>DeVille v. Whitley</u>, 21 F.3d 654,
659 (5th Cir. 1994). <u>See also</u> <u>United States v. Lemaster</u>, 403 F.3d 216, 221-222
(4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of
sworn statements made during a Rule 11 colloquy is conclusively established, and
a district court should, without holding an evidentiary hearing, dismiss any
§2255 motion that necessarily relies on allegations that contradict the sworn
statements.").

an opportunity to discuss the appeal waiver with counsel off the record, after which he informed the Court that he had fully discussed the appellate waiver with counsel and he was entering into the waiver of his appellate rights freely and voluntarily. Id. at 25.  The appellate waiver in this case was clearly knowing and voluntary. There is nothing of record to suggest that the movant did not understand the significance of the waiver of appeal.

The record reveals that the waiver did not result in an unlawful denial of Movant's right to appeal, but was rather a part of a lawful, enforceable agreement between the movant and the government, as found by the Eleventh Circuit. Movant's direct appeal was dismissed after the Eleventh Circuit expressly found the waiver to have been voluntarily made when Movant entered into the negotiated plea agreement and when he persisted in his guilty plea with the full knowledge that he was to be sentenced as a career offender although having been given the opportunity to withdraw his plea. See United States v. Maldonado, No. 09-15745-FF (11th Cir. June 17, 2010). Under the circumstances presented here, the movant is not only precluded from challenging the manner in which sentence was imposed, but is also precluded from challenging his sentence in the guise of an ineffective assistance of counsel claim. Williams, supra. Consequently, claim seven of the instant motion is covered by the appeal waiver and therefore not subject to collateral attack in this proceeding.

Moreover, Movant's claim that his sentence was imposed in violation of the sentencing guidelines is not reviewable on the merits on an alternate basis. Sentencing errors are generally not cognizable in a collateral attack unless the error complained of resulted in a complete miscarriage of justice. See e.g., Burke v. United States, 152 F.3d 1329 (11th Cir. 1998)(holding that nonconstitutional claims, such as the claim that a sentence was

contrary to a subsequently enacted clarifying sentencing guidelines amendment, can be raised on collateral review of a conviction only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994)(stating that, "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under §2255."). See also 28 U.S.C. §2255(a); Gilbert v. United States, 640 F.3d 1293, 1321 (11th Cir. 2011)("Gilbert III")(en banc)(stating that "Gilbert's claim that a sentencing guidelines provision was misapplied to him is not a constitutional claim. If it were, every guidelines error would be a constitutional violation.").[11] Since Movant was afforded due process at the sentencing hearing and has not demonstrated a constitutional violation or an error which resulted in a "complete miscarriage of justice," his challenge to his sentence is not cognizable in this proceeding.

Even if Movant were entitled to review on the merits of his sentence attack, he would not be entitled to postconviction relief because his challenge is meritless. Under the United States Sentencing Guidelines §4B1.1, a defendant is a career offender if he is (1) at least eighteen years old at the time of the offense, (2) the instant offense is a felony conviction that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. U.S.S.G.

---

[11]It is noted that the Eleventh Circuit in Gilbert explicitly did not address the issue whether a guidelines misapplication claim based on a new Supreme Court rule is cognizable in an initial collateral attack. The Eleventh Circuit concluded that it had "no reason to decide that issue because this is not [the defendant]'s first collateral attack on his sentence." Gilbert v. United States, 640 F.3d 1293, 1306 (11th Cir. 2011).

§4B1.1(a). As recognized by the United States Supreme Court in Salinas v. United States, 547 U.S. 188, 126 S.Ct. 1675, 164 L.Ed.2d 364 (2006), a conviction for simple possession of a controlled substance is not a controlled substance offense as defined under U.S.S.G. §4B1.2(b). Id. at 188. A controlled substance offense is defined in pertinent part as an offense involving possession "with intent to manufacture, import, export, distribute, or dispense." Id. (quoting U.S.S.G. §4B 1.2(b)).

Florida law prohibits any person from selling, manufacturing, or delivering, or possessing with intent to sell, manufacture, or deliver marijuana. Fla.Stat. §893.13(1)(a)(2). Such an offense is punishable by up to 5 years imprisonment. Id.; Fla. Stat. §775.082(3)(d). Movant was previously convicted of delivery of cocaine in Case No. 04-019477-CF10A in the Circuit Court for Broward County, Florida. See PSI at ¶93. He was also convicted in Broward County Circuit Court Case No. 06-6491 of possession with intent to sell/manufacture/deliver heroin and possession with intent to sell/manufacture/deliver cocaine. Id. at ¶95. Movant's two prior narcotics convictions are not convictions for simple possession, see generally, Ewing v. State, 56 So.3d 67, 68 (Fla. 2d DCA 2011)(the crime of possession of any drug is a lesser included offense of the unlawful sale, delivery, or possession of a controlled substance with intent to sell or deliver offense), and were properly classified as controlled substance offenses. As such, these offenses qualify as controlled substance offenses and his career offender sentence is lawful.

## VII. Evidentiary Hearing

Movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel or any other claim raised herein should be denied, because no further factual development is necessary to the resolution of his claims. See Rules Governing §2255 Proceedings, Rule 8, 28 U.S.C. foll. §2255. Because, as

indicated by the discussion above, the motion and the files and records of the case conclusively show that Movant is entitled to no relief, an evidentiary hearing is not warranted. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), *citing*, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979).

## VIII. Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Movant cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this

recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VIII. <u>Conclusion</u>

Movant has failed to demonstrate a breach of the plea agreement, that his plea of guilty was involuntarily entered, that his attorney rendered ineffective assistance with regard to the entry of the guilty plea and resultant sentence and/or that his career offender sentence was unlawful. It is therefore recommended that this motion to vacate be DENIED, and no certificate of appealability should issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 26th day of April, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Randy Maldonado, <u>Pro</u> <u>Se</u>
    Reg.No. 81877-004
    FCI - Coleman (Low)
    P.O. Box 1031
    Coleman, FL 33521-1031

    Michael N. Berger, AUSA
    U.S. Attorney's Office
    99 N.E. 4th Street
    Miami, FL 33132